**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| M. DENISE TOLLIVER,<br><br>Plaintiff,<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC,<br><br>Defendant. | Civil Action No. 21-1768-RGA |

MEMORANDUM OPINION

M. Denise Tolliver, Camden, DE,

Pro Se Plaintiff.

Christina J. Pross, MARINOSCI LAW GROUP, Newark, DE,

Attorney for Defendant Rushmore Loan Management Services, LLC.

November 17, 2026

**ANDREWS, U.S. DISTRICT JUDGE:**

On April 29, 2026, I held a one-day bench trial on Count One of Plaintiff M. Denise Tolliver's Third Amended Complaint against Defendant Rushmore Loan Management Services ("Rushmore"). I determined that Rushmore negligently violated 15 U.S.C. § 1681a-2(b)(1) of the Fair Credit Reporting Act ("FCRA") at the end of September 2021 by failing to conduct a reasonable investigation of the information related to Tolliver's accounts that it reported to Credit Reporting Agencies ("CRA"). (D.I. 134 at 10, 13–21). However, I found that Tolliver did not prove she suffered any damages as a result of Rushmore's FCRA violation. (*Id.* at 21–26). I entered a final judgment that Rushmore violated 15 U.S.C. § 1681a-2(b)(1), and that Tolliver was not entitled to damages for the violation. (D.I. 135). Before me now is Tolliver's Motion to Amend Judgment. (D.I. 138). I have considered the parties' briefing. (D.I. 138, 146, 148). For the reasons set forth below, this motion is DENIED.

It appears that Tolliver's motion is based on Federal Rules of Civil Procedure 59(a)(2) and 59(e), and in the alternative, Rule 59(a)(1)(B).[1]

## I. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 59(a)(2)

After a nonjury trial, Federal Rule of Civil Procedure 59(a)(2) allows a court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." FED. R. CIV. P. 59(a)(2). The decision to grant or deny a new trial is committed to the sound discretion of the

[1] Tolliver only cites Federal Rule of Civil Procedure 59(e). (*See* D.I. 138). However, she quotes Rule 59(a)(2) and requests that I allow "additional testimony" as if she were making a motion for a new trial under Rule 59. (*Id.* at 2). At the end of her motion, she requests that I grant a new trial to allow a jury to determine damages. (*Id.* at ¶ 17).

district court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). "Courts have cited three grounds for granting a new trial under Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." *United States v. Schiffer*, 836 F. Supp. 1164, 1169 (E.D. Pa. 1993) (citing *Brown v. Wright,* 588 F.2d 708 (9th Cir.1978)).

**B. Federal Rule of Civil Procedure 59(e)**

Federal Rule of Civil Procedure 59(e) allows for a judgment to be altered or amended. FED. R. CIV. P. 59(e). "The purpose of a motion [under Rule 59(e)] is to correct manifest errors of law or fact or to present newly discovered evidence." *U.S. ex rel Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 848 (3d Cir. 2014) (cleaned up); *see Max's Seafood Café v. Quinteros*, 176 F.3d 669, 667 (3d Cir. 1999). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [entered the] judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 667.

**C. Federal Rule of Civil Procedure 59(a)(1)(B)**

Federal Rule of Civil Procedure 59(a)(1) states: "The court may, on motion, grant a new trial on all or some of the issues . . . after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." FED. R. CIV. P. 59(a)(1)(B). "In non-jury cases, the grant of a new trial is usually reserved for instances in which the trial was 'infected with manifest errors of law or fact." *P.R. Mar. Shipping Auth. v. Valley Freight Sys., Inc.*, 856 F.2d 546, 553 (3d Cir. 1988) (quoting *U.S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 180

(3d Cir.1981)). The decision to grant or deny a new trial is committed to the sound discretion of the district court. *Allied Chem*, 449 U.S. at 36.

## II. DISCUSSION

Essentially, Plaintiff seeks an amended judgment or a new trial. I consider the various arguments that she makes.

### A. Additional Testimony and Evidence

Tolliver argues that I should "take additional testimony" before amending the findings of fact, conclusions of law, and final judgment. (D.I. 138 at 2). She identifies three sets of evidence that she argues should be considered in an amended judgment. I assume that Tolliver intended for me to consider whether the evidence warrants opening the judgment under Federal Rule of Civil Procedure 59(a)(2).

First, Tolliver seeks to have a 2025 Massachusetts settlement agreement[2] admitted into the record. (D.I. 138 at ¶ 1). The settlement agreement dealt with an action that the State of Massachusetts brought against Cypress Loan Servicing, LLC, Rushmore's successor, for violation of Massachusetts consumer protection laws. The only explanation Tolliver offers for why the judgment should be reopened to admit the settlement agreement is that it is "[r]elevant to Rushmore's undeterred conduct of statutory violations against vulnerable homeowners seeking help for foreclosure prevention, home preservation." (*Id.*). Not only has the settlement agreement existed since August 2025, approximately eight months before the trial in this case, but it is irrelevant to actions Rushmore did or did not take in September 2021. I found that Rushmore had violated the FCRA by failing to complete a reasonable investigation of Tolliver's credit file; there

[2] *In re Cypress Loan Servicing LLC, formerly known as Rushmore Loan Management Services LLC*, No. 2584CV02178, Assurance of Discontinuance (Mass. Super. Ct. received Aug. 7, 2025), available at https://www.mass.gov/doc/cypress-rushmore-aod/download.

is no need for additional evidence to support the finding that Rushmore violated the FCRA.[3] (*See* D.I. 134, 135). Nor does Rushmore's inferred lack of compliance with Massachusetts law relate to damages Tolliver suffered as a result of Rushmore's specific FCRA violation. As the evidence existed before trial and it would not change the outcome of the case, the judgment will not be opened to admit the 2025 Massachusetts settlement agreement.

Second, Tolliver asks the Court to "[r]equire Rushmore to produce by affidavit e-OSCAR Automated Universal Data ('AUD') or Automated Consumer Dispute Verification ('ACDV') forms with corresponding credit report" for the disputes she sent on October 25, 2020, July 29, 2022, and August 8, 2023. (D.I. 138 at ¶ 2). Tolliver has not explained why these documents are necessary or what they would change about the outcome of the trial. More importantly, the opportunity for discovery concluded February 28, 2025, over a year before trial. (D.I. 72 at ¶ 1). Now is not the time, nor is a post-trial motion the place, to ask the Court for assistance with discovery. Tolliver's request to open the judgment to seek discovery of and to admit additional e-OSCAR information is denied.

Third, Tolliver "request[s] that Rushmore produce by affidavit paid invoices for fees charged on or after September 30, 2021, charged by Rushmore to vacate foreclosure action at Delaware Superior Court Case No. N18L-07-054-CEB." (D.I. 138 at ¶ 3). It appears that Tolliver seeks this information to understand the fees that Rushmore charged as part of the Modification Agreement and for the state court foreclosure action. (*See id.* at 2–3). The fees charged by Rushmore as part of the Modification Agreement and the separate state court foreclosure action have nothing to do with whether Rushmore violated the FCRA by failing to conduct a reasonable

---

[3] In general, a 2025 settlement agreement, if it is admissible at all, *see* FED. R. EVID. 408, is not relevant evidence about events occurring in 2021. The settlement agreement offers even less support for Tolliver's FCRA claims because the settlement is based on Massachusetts state law.

investigation of Tolliver's credit file. Tolliver's request to open the judgment to seek discovery of and to admit evidence on fees charged by Rushmore is denied.

**B. Amendments to Findings of Fact**

Tolliver argues that I should amend my findings of fact to specify that Rushmore did not object to the damages claims that Tolliver identified in the pretrial order. (D.I. 138 at ¶ 4). Whether or not Rushmore objected to Tolliver's damages claims in the pretrial order is irrelevant now. The damages claims identified in the pretrial order served to provide notice to the Court and Rushmore of the damages that Tolliver intended to prove at trial. Tolliver still had the burden of proving those damages at trial. Toliver's request to amend the findings of fact is denied because there has been no change in intervening law, no newly discovered evidence, and no errors of law or fact that would cause a manifest injustice.

Tolliver argues that my finding of facts should be amended to reflect that her alleged October 7, 2021, updated credit score was not admitted into evidence. (D.I. 138 at ¶ 5). There is currently no finding of fact related to Tolliver's credit scores because there were no arguments made at trial regarding any changes to her credit score.[4] The evidence related to Tolliver's October 2021 credit score existed for almost five years before trial, and I see no reason why she would not have been able to access it before trial.[5] Thus, evidence of Tolliver's October 2021 credit score is not newly discovered evidence that warrants amending the final judgment. Further, I do not believe that the outcome of the trial would have changed had information about her October 2021

---

[4] The closest thing to her post-violation credit score that was discussed at trial was Defendant's exhibit 6, which states, "Rushmore sends bulk credit reporting for our loans to the credit reporting agencies, which typically occurs between the 7th and 9th of the month." (DTX-6 at 2). Tolliver did not challenge this evidence at trial.

[5] Tolliver alleges specific drops in her credit score in her Third Amended Complaint. (D.I. 35 at ¶ 26). Thus, it seems reasonable to infer that Tolliver knew of changes to her credit score and could access the information,

credit score been admitted. Without evidence of her credit score prior to Rushmore's violation, evidence of a post-violation credit score does not prove anything. There are many possible intervening factors that may have changed Tolliver's credit score as well, such as a third party discovering she had defaulted on her mortgage for nearly three years, the foreclosure action, or other credit lines unrelated to this case. Thus, there is no manifest injustice caused by omitting this evidence. As there has been no change in intervening law, no newly discovered evidence, and no errors of law or fact that would cause a manifest injustice, Tolliver's request to amend my findings of fact to specify that her October 7, 2021, credit score was not admitted into evidence is denied.

Tolliver requests that I amend my findings of fact to address "an alleged A[CD]V[] showing created date October 7, 2021, and submitted date of October 15, 2021, [that] has multiple inaccuracies including name and address . . . ." (D.I. 138 at ¶ 5). Tolliver argues that I should amend my findings of fact because it is a "material fact in deciding [whether Rushmore conducted an] unreasonable investigation and opens tolling for determining damages award for any harm that occurred up to current date." (*Id.*). Tolliver does not argue that there was a change in the law. Neither could she argue that the October 2021 ACDV form, as something that a CRA would have sent to Rushmore based upon Tolliver's request, was newly discovered evidence she did not know about before trial. Nor do I see how proceeding without the October 2021 ACDV form results in any mistake of law or fact that would cause a manifest injustice. Based on the evidence at trial, I determined that Rushmore failed to conduct a reasonable investigation after receiving the September 2021 ACDV form. There is no reason that a later submitted dispute would be needed as evidence of an unreasonable investigation of Tolliver's September 2021 dispute. Assuming for the sake of argument that the October 2021 ACDV form shows continuing violations by reporting

the incorrect name and address,[6] I have already determined that the mistake in Tolliver's name and address cannot be used as the basis of her FCRA claim because she failed to raise the argument at an appropriate time.[7] (D.I. 111 at 2 n.2). Similarly, if Tolliver wanted to make a claim of continued FCRA violations, she missed her chance to do so. Tolliver's motion to amend my findings of fact to include the October 2021 ACDV form is denied.[8]

**C. Amendments to Conclusions of Law**

Tolliver argues that I did not properly consider her claims of continuing FCRA violations. (D.I. 138 at ¶ 6). Rushmore's investigation and reporting of Tolliver's date of last payment was the only FCRA violation found at trial. (*See* D.I. 134 at 13–21). Evidence presented at trial shows that Rushmore updated its internal accounts on October 7, 2021 (DTX-3 at 5–6; DTX-6 at 3) and would send updated credit information to the CRAs soon after (DTX-6 at 2). Tolliver has not identified any evidence that indicates Rushmore continued to misreport the date of last payment after October 2021. It was Tolliver's burden to prove that Rushmore continued to violate the FCRA. To the extent that Tolliver intends for this argument to include continuing damages, she has not connected any of her continuing emotional distress, costs, or other potential damages to Rushmore's violation. As noted in the trial opinion, Tolliver's arguments for damages related to emotional distress and lost credit opportunities caused by actions before Rushmore's FCRA violation. (*See* D.I. 135 at 22). Even if these harms were ongoing, the evidence presented at trial would have been insufficient to show that Rushmore's violation was a substantial factor in

---

[6] Without having the October 2021 ACDV form and knowing more about the context surrounding it, I cannot determine whether it would show that Rushmore continued to violate the FCRA.

[7] Even if the October 2021 ACDV form had been admitted and considered at trial, I do not think Tolliver would be entitled to damages because there was no evidence indicating that Rushmore's continued misreporting of Tolliver's name and address caused any harm.

[8] To the extent Tolliver's request was intended as a motion to open the judgment and allow for additional testimony under Rule 59(a)(2), it is denied for the same reasons.

bringing about the harms caused by events occurring before the September 2021 violation. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3d Cir. 1996); *Gagliardi v. Equifax Info. Servs., LLC*, 2011 WL 337331, at *12 (W.D. Pa. Feb. 3, 2011). Thus, there are no grounds for amending my conclusions of law regarding continuing FCRA violations.

Tolliver similarly argues that my conclusions of law should be amended because I did not properly consider her claims for wasted time. (D.I. 138 at ¶¶ 6, 16). While Tolliver is correct that wasted time is compensable as damages under the FCRA, *Cortez v. Trans Union*, LLC, 617 F.3d 688, 719 (3d Cir. 2010), she did not advance a wasted time theory in her Third Amended Complaint (*see* D.I. 35), the pretrial order (*see* D.I. 128 at 15–18), or at trial (*see* D.I. 133). "A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made and may not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Kaufman v. Allemang*, 70 F. Supp. 3d 682, 697 (D. Del. 2014) (internal quotation omitted).[9]

Tolliver argues that my conclusions of law should be amended to reflect harm beginning on November 30, 2020, "when Rushmore failed to respond to [the] credit report 'Direct Dispute'" she sent five days before. (D.I. 138 at ¶ 7). Tolliver similarly argues I should make a new conclusion of law finding that any inaccuracies Rushmore made in her personally identifiable information or personal history profile during "any period of mortgage relief accommodation" is a harm that triggers liability. (*Id.* at ¶ 9). The relevant damages statute allows for recovery of "any

[9] As part of her argument, Tolliver mentions that she holds a paralegal certificate, has accrued over 600 hours working on her case, and could be compensated at her paralegal hourly rate of $130 per hour. (D.I. 138 at ¶ 16). This evidence was not brought up at trial. To the extent Tolliver's request was intended as a motion to open the judgment and allow for the new evidence to come in under Rule 59(a)(2), her motion is denied for failing to raise it at a proper time. I do not address the merits of whether a pro se paralegal may recover her normal paralegal rates for the time spent working on her own case.

actual damages sustained by the consumer as a result of the failure" to comply with the investigation requirements of the FCRA. 15 U.S.C. § 1681o(a)(1). The investigation requirements under 15 U.S.C. § 1681s-2(b)(1) "are implicated only '[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency.'" *SimmsParris v. Countywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011). (quoting 15 U.S.C. § 1681s-2(b)(1)). "Notice under § 1681i(a)(2) must be given by a credit reporting agency, and cannot come directly from the consumer." *Id.* Thus, Tolliver's "Direct Dispute" did not trigger the investigation requirements of the FCRA. Nor have the investigation requirements been triggered simply because Tolliver received a "mortgage relief accommodation." The damages period began only after Rushmore received the ACDV form from Transunion on September 22, 2021. Tolliver has not identified any grounds for amending the damages period to start before the violation occurred.

Tolliver requests I amend my conclusions of law to find that "[t]olling of harm upon credit report direct dispute[s] to furnishers under FCRA has the exact requirements as disputes made to credit bureaus." (D.I. 138 at ¶ 10). Tolliver did not provide any explanation for why this proposed amendment meets the standards to amend a final judgment under Rule 59(e). However, there is no need for a discussion on tolling because Tolliver did not prove she suffered any damages as a result of Rushmore's FCRA violation. As there have been no intervening changes in law, no newly discovered evidence, and no errors of law or fact that would result in a manifest injustice, Tolliver's request to amend my conclusions of law to add a finding on tolling is denied.

Tolliver argues that I should amend my conclusions of law to match the damages awarded by a jury in *Robinson v. Tower Federal Credit Union*, No. 24-713, D.I. 89 (D. Del. Sept. 15, 2026). (D.I. 138 at ¶ 8). She does not argue that *Robinson* was a change in the law. Nor does Tolliver

identify any similarities between her case and *Robinson* that would make the verdict in *Robinson* applicable to her case. A key difference between these cases is that the defendant's FCRA violation in *Robinson* was found to be willful, resulting in punitive damages accounting for more than 95% of the award. By contrast, Tolliver did not show that Rushmore willfully violated the FCRA, thereby precluding punitive damages. When it comes to actual damages, the jury in *Robinson* determined that the evidence at trial showed the defendant's FCRA violation was a substantial factor in causing $100,000 of damages to the plaintiff. In this case, Tolliver essentially did not present any evidence connecting Rushmore's FCRA violation to any harm she suffered. The results of the cases are different because the facts of the cases are different. The award in the *Robinson* case does not create any grounds for amending the final judgment here.

**D. "Prejudice"**

Tolliver includes a section titled "Prejudice" with a list of events from trial. (D.I. 138 at ¶¶ 11–16). I assume that Tolliver intends for the list to represent events she believes caused prejudice to her during trial. As the events listed in the section largely do not relate to something that can be amended in the trial opinion or final judgment, it appears that she intends for this section to support a motion for a new trial. Where applicable, I analyze each event as support for both a motion for a new trial and a motion to amend.[10]

Tolliver notes that there was a discussion on nominal damages at the end of the trial. (D.I. 138 at ¶ 11). She states, "It is now my understanding and belief that an award of nominal damage is not statutorily available under FCRA." (*Id.*). Despite recognizing that nominal damages are not allowed under the relevant statute, Tolliver writes, "No award of damage as well as attorney fees

[10] Tolliver's paragraph sixteen addresses the consideration of wasted time in the determination of actual damages. (D.I. 138 at ¶ 16). I have addressed this argument on page 9 of this Memorandum Opinion.

and costs not being awarded appear to be consistent with the intent of a nominal damage award." (*Id.*). It is not entirely clear what Tolliver is asking for in this paragraph. During the discussion on damages at the end of the trial, there was a very brief mention of nominal damages. (D.I. 156:25–157:10). This mention of nominal damages was not to say that Tolliver was entitled to nominal damages. Rather, it was part of the larger discussion on possible damages that may or may not be available for the FCRA violation. Tolliver is correct that nominal damages are not allowed for a violation of the FCRA. *Cooper v. Milliman*, 2025 WL 2249600, at *6 (M.D. Fla. Aug. 7, 2025); *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581–82 (D. Md. 2015); *Harris v. Experian Info. Sols.*, 2009 U.S. Dist. LEXIS 149959, at *20–21 (D.S.C. June 30, 2009); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 346 (N.D. Ill. 2002). It is irrelevant if nominal damages may seem consistent with the outcome of the case; unlike actions under other statutes that allow for nominal damages, the FCRA was written in such a way to prohibit nominal damages. As nominal damages are not allowed under the FCRA, there are no grounds to amend the judgment or grant a new trial.

Tolliver argues that she was denied an "expedient" trial. (D.I. 138 at ¶ 12). To support her argument, she notes that the *Robinson* case took approximately two years to resolve. (*Id.*). Contrary to Tolliver's argument that her case was comparable to *Robinson*, the cases had stark procedural differences. Tolliver's case reached a third amended complaint (D.I. 35), had two rounds of motions to dismiss (D.I. 20, 59), was referred to mediation twice (D.I. 77, 95), involved multiple changes between representation by counsel and pro se representation[11] (D.I. 93, 121, 137),

[11] Tolliver was pro se until December 10, 2024, at which time Angelica Mamani first began representing her. Ms. Mamani filed a motion to withdraw as counsel on September 2, 2025 (D.I. 85), which was granted shortly after (D.I. 93). Ms. Mamani resumed representing Tolliver on April 7, 2026. (D.I. 121). After trial, Ms. Mamani filed a motion to withdraw on October 2, 2026 (D.I. 136), which was granted shortly after (D.I. 137).

and involved post-trial briefing (D.I. 129, 131). By contrast, in *Robinson* there were no amended complaints, no motions to dismiss (only a stipulated dismissal of one of the parties, *see* 24-713, D.I. 25 (D. Del. Oct. 10, 2024)), no referrals to mediation, no major changes in representation,[12] and no need for the parties to submit additional briefing before the jury reached a verdict. It is to be expected that the different procedural history of these two cases would result in the cases progressing on very different timelines. Tolliver has not identified any specific reasons that the timing of the case caused prejudice, nor do I see how it would. Tolliver has not shown that the timing of her case creates any grounds for a new trial.[13]

Tolliver argues that she did not receive notice that her case would be reduced from a two-day trial to a one-day trial prior to her attorney agreeing to it at the pretrial conference. (D.I. 138 at ¶ 13). There was no need for Tolliver's trial counsel, Ms. Mamani, to obtain Tolliver's consent before agreeing to reduce trial to a single day. Nor has Tolliver explained how the reduction to a one-day trial harmed her. The proposed pretrial order includes one witness for each side and twenty-one total exhibits between the parties. (D.I. 120 at 8–13). One day provided plenty of time for each side to fairly present its case.[14] Tolliver has not shown how the reduction from a two-day trial to a one-day trial would serve as a reason for a new trial.[15]

Tolliver points out that her counsel was "put at a grave disadvantage, literally litigating against 1 to 3 of Defendant's seasoned attorneys." (D.I. 138 at ¶ 13). However, she does not explain why her counsel was at a "grave disadvantage" or how the alleged disadvantage impacted

---

[12] While defendant in *Robinson* had a change in lead trial counsel ten days before trial (No. 24-713, D.I. 67 (D. Del. Aug. 31, 2026)), the new counsel came from the same firm and there was no change in trial schedule.

[13] I do not see how Tolliver could have intended her timing argument to support a motion to amend the judgment.

[14] The trial concluded at 3:38 p.m. (D.I. 133 at 160).

[15] I do not see how the reduction in trial time would support a motion to amend judgment.

the trial. In any event, the opposing party simply having more attorneys with more experience does not serve as grounds for a new trial.[16]

Tolliver argues that she was denied the opportunity to depose Rushmore's witness, Jason George. (D.I. 138 at ¶ 14). She does not offer any explanation for why the denial of her request harmed her or serves as grounds for a new trial. Tolliver asked Rushmore for a Rule 30(b)(6) deposition sometime after March 18, 2026. (D.I. 123 at ¶¶ 8–10). I was not informed of her deposition request until the proposed pretrial order was submitted on April 1, 2026. (D.I. 120 at 19–20). Tolliver's request for a Rule 30(b)(6) deposition came more than a year after the February 28, 2025, discovery cutoff. (D.I. 72 at ¶ 1). On April 16, Tolliver filed a motion in limine seeking to exclude Jason George from testifying because he had not properly been disclosed under Federal Rule of Civil Procedure 26. (D.I. 123). Her motion was ultimately resolved because Rushmore explained that Mr. George had no firsthand knowledge of Tolliver's case and would only be testifying to Rushmore's business procedures. (D.I. 128 at 20–21; *see also* D.I. 123 at ¶¶ 18, 20 (Tolliver conceding in her motion in limine that Mr. George could testify to the information Rushmore claimed he would be testifying to)). I do not believe Mr. George's testimony extended past the limits discussed at the pretrial conference, nor does Tolliver allege it did. Tolliver's failure to request a Rule 30(b)(6) deposition in a timely manner does not create any reason for a new trial.[17]

Tolliver identifies the exclusion of Rushmore's "reporting of entire Personal History Profile for the Trial Period Plan and Permanent Modification monthly payments for July 2020 to

---

[16] The difference in experience does not plausibly relate to a motion to amend the judgment.
[17] I do not see how the inability to conduct a Rule 30(b)(6) deposition would support a motion to amend judgment.

March 2024" as a source of prejudice.[18] (D.I. 138 at ¶ 15). I do not believe there were any rulings excluding evidence related to the information Rushmore reported before or after Tolliver submitted her dispute with Transunion. To the contrary, Tolliver introduced evidence related to Rushmore's reporting both before and after she submitted her dispute. (*See* PTX pp. 1, 6, 7–8, 9–10, 11–12, 13–14, 21, 50–51, 52). Regardless, most evidence of Rushmore's reporting between July 2020 and March 2024 is irrelevant to Tolliver's FCRA claim. Rushmore's reporting is only relevant after it received the ACDV form from Transunion on September 22, 2021, because a furnisher of credit information can only violate 15 U.S.C. § 1681a-2(b)(1) after receiving notice of a dispute from a credit reporting agency. *SimmsParris*, 652 F.3d at 358. Similarly, once Rushmore fixed its reporting issues in October of 2021, its reporting was no longer relevant because there was no violation. My summary judgment ruling further limited the relevance of much of Rushmore's reporting by resolving disputes related to whether Rushmore could report Tolliver's TPP payments before her account was current and whether Tolliver could base her FCRA claims on errors in her name and address despite not raising the issues before the summary judgment stage. (D.I. 111 at 2–3). To the extent that Tolliver is challenging my summary judgment rulings, now is not the appropriate time to do so. Tolliver has not identified any reason that supports amending the judgment or granting a new trial.

**E. In the Alternative, Grant a New Trial**

[18] In paragraph nine of her motion, Tolliver defines "Personal History Profile" as "monthly payment rating by CDIA Metro2 codes such as 'D' . . . ." (D.I. 138 at ¶ 9). That definition of "Personal History Profile" does not seem to fit how the phrase is used in the argument at paragraph 15 of the motion. There was no discussion at trial of "Personal History Profile" or "CDIA Metro2 codes." As it is not clear what information Tolliver is referencing in this paragraph, I analyze her argument as if she is arguing that excluding any information Rushmore reported between July 2020 and March 2024 caused prejudice.

Tolliver requests that, in the alternative to entering a new judgment, she be granted a new trial to determine damages, this time as a jury trial[19] and with court-appointed counsel.[20] (D.I. 138 at ¶ 17). Tolliver does not offer any additional evidence to support her motion for a new trial. As addressed above, Tolliver has not identified any errors of law or fact that must be corrected to prevent a manifest injustice. Thus, Tolliver's motion for a new trial is denied.

## III. CONCLUSION

I will enter a separate order in accord with this memorandum.

[19] Tolliver requested a bench trial; Defendant agreed. (D.I. 118). I think Tolliver has waived any right to a jury trial.

[20] Tolliver paid the filing fee. (D.I. 1). She twice hired an attorney. She is ineligible for court-appointed counsel.